[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff CT Page 11169 husband against the defendant wife. The action was commenced on May 1, 1998. On May 27, 1999, judgment of dissolution of the parties' marriage was entered before the Honorable Lloyd Cutsumpas and a separation agreement of even date was submitted to the court, was approved and orders were entered in accordance with that agreement. On July 26, 1999, the plaintiff filed a motion to reopen the judgment. On September 30, 1999, that motion was granted by the Honorable Daniel E. Brennan, Jr. The matter was then referred to the undersigned for hearing upon the original complaint.
The parties were married on June 11, 1983, in Norwich, Connecticut. There are four children issue of the parties: Katherine Elizabeth born April 3, 1934; Peter Alfred born September 27, 1985; Alfred Elias born December 9, 1990; and Nicholas Eugene born June 1, 1992.
The parties have agreed that there shall be joint legal custody of the minor children and that the children shall reside principally with the defendant. The parties have agreed, further, that the plaintiff shall have liberal, flexible and generous rights of visitation including vacations and holidays.
Following the marriage of the parties, they resided in Boston. During their Boston residency and their subsequent Cape Cod residency, the plaintiff commuted to New York City to carry on his business. The plaintiff's business is now and has been virtually throughout the marriage the buying and selling of caviar. In 1990, the plaintiff established his own business called Connoisseur Brands, a C corporation with offices in Mew York City. This is a one man operation with six or seven employees representing the office staff and warehouse staff.
The plaintiff is 46 years of age and in good health. He has a high school education and is self-taught. The defendant is 48 years of age. She graduated from Emanuelson Heart College in Los Angeles, California in 1977 and worked until 1983 when the parties married. She worked again full time in 1989 and at that time worked in the caviar business as a salesperson and earned a net wage of $400 per week. She has not been employed outside the home since that time, but has rather worked as a homemaker and raised the parties' four children. In 1997, they moved to Fairfield, Connecticut. The plaintiff then commuted to New York City and returned home each evening. Prior to that time, he would stay in New York City evenings and come home on weekends. In March, 1998, the parties separated, the plaintiff taking residency in New York City. He has recently leased a home in Fairfield so that he can visit with his children on a regular basis. The home that he rents has sufficient bedrooms so that the children can sleep over on weekends. CT Page 11170
The plaintiff's business fluctuates depending upon an enormous number of different factors including environmental regulations, the cost of merchandise and exchange rates. In 1998, Connoisseur Brands suffered a significant loss which reduced its capital. The bank called the company's credit line and the company experienced serious cash flow problems. That year the company experienced a loss of $216,000. In 1999, the company realized a net profit for the year of $329,626 and, after a dividend of $13,000, ended the year with retained earnings of $100,000. (See defendant's exhibits 5 and 6.) The company, however, for the first 7 month of 2000 has a loss of $140,000.
Because of the company's loss in 1998, the plaintiff had to reduce his salary from $130,000 per year to $100,000 per year, which is what it continues to be at the present time. In addition, the plaintiff receives $6,250 per month as commission income. This amount ($75,000 per year) is to satisfy the plaintiff's obligation to Ocean Beauty Corporation. That indebtedness, which is now $75,000, will be paid off in one year's time.
In 1999, the plaintiff anticipated that a partner would be coming into the business and that there would be a cash infusion in capital. On the basis of this anticipated event, the plaintiff entered into the agreement of May 27, 1999. As found by Judge Brennan in his Memorandum of Decision dated September 30, 1999: "At the time of the Agreement, both parties and counsel knew that financial compliance was only possible if the plaintiff's hoped — for business deal matured." That "hoped-for" business deal did not mature and the plaintiff was faced with an impossibility of performance.
On November 8, 1999, the parties entered a stipulation regarding alimony and support pendente lite. That agreement provided for alimony to be paid to the defendant in the amount of $2,500 per month. It further provided for support to be paid in the amount of $500 per month for each child. While this amount is $1,500 per month less than the agreement had provided and while the defendant would like to have this court restore that original order and, indeed, has submitted claims for relief requesting alimony of $80,000 per year and support in the amount of $36,000 per year, such sums are clearly beyond the plaintiff's ability to pay.
With regard to the assignment of property, the parties agree that the plaintiff shall quit claim all of his right, title and interest in and to the real property at 25 Hunter Road in Fairfield, Connecticut, to the defendant. The defendant, however, seeks one half of the plaintiff's IRA accounts amounting to $159,000. The Hunter Road property has an equity of $112,783. In addition to his IRA accounts, the plaintiff has his stock in Connoisseur Brands with a book value of $400,000 as of December 31, CT Page 11171 1999. Considering the loss to June 30, 2000 of $100,000, this reduces the book value to $300,000. The value of Connoisseur Brands is, however, the income source that provides the plaintiff with the ability to pay alimony and support.
In reaching a decision on the division of the plaintiff's retirement accounts, the court has considered the fact that the parties were together for fifteen years, although the duration of the marriage has been seventeen years.
The defendant has chosen not to seek employment since 1989. Her education, overall health, appearance and demonstrated earning capacity all demonstrate that she could be gainfully employed full time if she chose to do so. The two youngest children, ages 9 and 8, are of an age where they are in school full time. While it is admittedly difficult for any mother with the care of children to report every day for a full time job, it is somehow mastered by the majority of homemakers today.
The court has considered the factors of § 46b-81 and § 46b-82
of the General Statutes together with the provisions of § 46b-04 of the General Statutes, the child support guidelines and the provisions of § 46b-215b of the General Statutes. The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Neither party is at fault for the breakdown of the marriage. The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The parties shall have joint custody of the minor children. All major questions except in the event of emergency pertaining to the education, health and welfare of the children shall be decided by the plaintiff and defendant jointly, and each shall consult with the other as often as it may be reasonably necessary regarding such matters. In the event the parties cannot agree as to any of said major questions after said consultation, said question shall be submitted to the court whose decision shall be binding upon the parties. In the event of the illness of any of the children, the first party to learn of such illness shall notify the other CT Page 11172 immediately. Each of the parties shall keep the other informed at all times of the whereabouts of the children. Neither party shall do anything which may estrange the children from the other or hamper the natural development of their love for both parties.
3. The plaintiff shall have reasonable and flexible co-parenting rights with the children which, at a minimum, shall be every other weekend with all four children from Friday at 6:00 p.m. to Sunday at 6:00 p.m. and one night each week from after school to 9:00 p.m. The parties shall share time with the children over all holidays and school vacations.
4. The plaintiff shall pay to the defendant as child support Five Hundred ($500.00) Dollars per month for each minor child. The plaintiff, at his option, may pay said amount on the 1st of each month in advance of fifty (50%) percent on the 1st and 15th of each month.
5. The plaintiff shall pay to the defendant as alimony the sum of Two Thousand Five Hundred ($2,500.00) Dollars per month, at his option in advance on the 1st of the month or fifty (50%) percent on the 1st
and 15th of each month. The plaintiff's obligations herein shall terminate upon the earliest occurrence of the following events: the death of the defendant, the death of the plaintiff, the remarriage of the defendant or the defendant's co-habitation pursuant to § 46b-86b of the General Statutes or June 1, 2010, when the youngest child turns eighteen (18) years of age. The term of alimony shall not be subject to modification.
6. Alimony, except as to term, and support shall be modifiable as provided by § 46b-86 of the General Statutes. The defendant, however, shall have the right to earn from employment up to Twenty Thousand ($20,000) Dollars gross income per year before the plaintiff can seek a modification of his obligation to pay alimony and/or child support based upon the defendant's income.
7. The plaintiff shall quit claim to the defendant all of his right, title and interest in and to the residence located at 25 Hunter Road, Fairfield, Connecticut, which is subject to a first mortgage in the approximate amount of $275,000. The defendant shall pay for and be responsible for all expenses and liabilities associated with this residence and shall hold the plaintiff free, harmless and indemnified from all such expenses including, but not limited to, the mortgage and real estate taxes.
8. Within sixty (60) days from the date of this decision, the plaintiff CT Page 11173 shall assign and transfer from his Morgan Stanley Dean Witter account the sum of Fifty-five Thousand ($55,000) Dollars to an IRA account established in the defendant's name. The defendant shall be responsible for all income taxes subsequently incurred upon any withdrawals from said account.
9. The plaintiff shall retain ownership of the following assets and the defendant shall make no claim to them: Connoisseur Brands Ltd., Morgan Stanley account #601367322, cash value of N.Y. Life Insurance Policy, balance of Morgan Stanley Dean Witter IRA and Republic National Bank of N.Y. IRA and Republic National Bank Money Market account.
10. The defendant shall retain as hers the tangible personal property at 25 Hunter Road in Fairfield free of any claim or demand by the plaintiff together with her account at Fleet Bank. The plaintiff shall retain as his the tangible personal property in his possession free of any claim or demand by the defendant.
11. Each of the parties shall be responsible for the liabilities listed on her or his financial affidavit and shall indemnify and hold harmless the other party from any claim or demand thereon.
12. In addition to the alimony as provided in paragraph 5 hereof, the plaintiff shall pay the loan payments on the defendant's leased automobile to April 1, 2001 together with the insurance and ordinary repairs. He shall not, however, be responsible for such charges as may be made by the lessor upon termination of the lease, i.e., excess mileage, excessive damage or wear and tear on the leased vehicle.
13. The plaintiff shall be entitled to the dependency exemptions for federal and state income tax purposes for the parties' children Oeter and Nicholas and the defendant shall be entitled to the dependency exemptions for income tax purposes for Katherine and Alfred.
14. The plaintiff shall, at his sole cost and expense, maintain and keep in full force and effect his present comprehensive medical insurance plan for the benefit of the minor children. The plaintiff shall, at all times said medical insurance is required, provide the defendant with certificates or cards supplied by the applicable insurance companies or entities evidencing said insurance and copies of all such policies upon reasonable request of the defendant.
15. So long as the plaintiff is responsible for support, he shall pay any and all reasonably necessary uninsured medical expenses incurred by and/or on behalf of the children. Neither party shall incur any CT Page 11174 uninsured medical expenses to include, but not by way of limitation, psychological, psychiatric, counseling and elective or corrective medical or optical expenses for which the other shall be responsible without prior consultation with and consent of the other, which consent shall not be unreasonably withheld, except in the event of an emergency.
 The defendant shall, on a regular monthly basis, send to the plaintiff all forms for medical reimbursement completely and properly filled out and executed, with copies of the appropriate bills, for submission to the medical or dental insurance carrier. The plaintiff may, if payment has not been made for such medical services, have such payment made directly to the person or entity providing such service. The parties shall divide evenly all unreimbursed dental and orthodonture expenses incurred on behalf of the minor children.
16. The plaintiff shall, at his sole cost and expense, maintain in full force and effect sufficient insurance on his life to enable him to designate the defendant as primary beneficiary of $250,000 of said life insurance during the period he is obligated to pay alimony. The plaintiff shall, at his sole cost and expense, maintain in full force and effect sufficient insurance on his life to enable him to designate the children as irrevocable beneficiaries of $750,000 of said life insurance on his life until each of the children is emancipated.
17. The parties shall consult with each other regarding the children's extracurricular activities including but not limited to camp, tennis and sports. Upon agreement, which agreement shall not be unreasonably withheld, each party shall be responsible for one-half the cost of such activities.
18. The plaintiff shall cooperate with the defendant in obtaining health benefits for her under COBRA at the defendant's expense.
19. The plaintiff shall contribute $7,500 towards the defendant's attorney's fees, which sum shall be paid to the defendant's attorneys within thirty (30) days of the date hereof.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE